ZAIDA ELICIER, ETC., Plaintiff and Appellant, *v.* HEIRS OF GENARO CAUTIÑO INSUA, ETC., Defendants and Appellees.

No. 9863.  Argued June 3, 1949.—Decided July 29, 1949.

408

*Samuel R. Quiñones* for appellant. *R. Rivera Zayas, G. Rivera Castero* and *Milton F. Rúa* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Zaida Elicier alleged four causes of action in the complaint filed by her against the Heirs of Genaro Cautiño Insua, composed of his widow Monserrate Bruno Domínguez de Cautiño and his son Genaro Cautiño Bruno. In the first she

mantained that on or about the years 1918 and 1920, Genaro Cautiño Insua and Margarita Elicier had sexual relations as a result of which she was born on February 19, 1920; that during all the time which elapsed since her conception and birth up to the death of Genaro Cautiño Insua on May 1, 1946, he had considered her as a daughter; that by virtue of that voluntary action of Genaro Cautiño Insua she acquired the capacity of his acknowledged natural child; and that the defendants, by their voluntary action also have acknowledged her as a daughter of Genaro Cautiño Insua, defendant Genaro Cautiño Bruno having always treated her as his sister. In the second cause she alleged that Genaro Cautiño Insua died under a will executed on April 21, 1946, and that he instituted the defendants as his sole and universal heirs; that at his death he was owner of real and personal property situated in Puerto Rico having a total value of $3,000,000; that the defendants are carrying out the partition of said estate and making the operations of inventory, liquidation, and division thereof behind her back; and that they have refused to give her the fruits and rents which belong to her from said estate and to render accounts thereon. In the third, she set up that the defendants have been receiving for their own benefit the fruits and rent of the estate left by her predecessor in interest. And in the fourth, that she and the defendants have not been able to reach an agreement as to the form of making the inventory, valuation, distribution, and partitional transactions of said estate.

To said complaint the defendant Cautiño Bruno filed a motion to dismiss for lack of facts sufficient to constitute a cause of action, and attached thereto a faithful copy of the certificate of the only marriage held, on July 16, 1905, between Genaro Cautiño Insua and the codefendant Monserrate Bruno Domínguez, with whom, as it was alleged, Cautiño Insua was married until the time of his death. Upon sustaining that motion, the lower court stated in the course

of its decision that ". . .the parties orally agreed and stipulated in open court that the complaint should be considered as stating *that the alleged acknowledgment of the plaintiff as daughter of the predecessor in interest by voluntary action of the latter and of the defendants, does not appear from any record, will, or any public document of the predecessor or of the defendants.*" (Italics ours.) Subsequently, and on petition of both defendants, the court rendered judgment in their favor and dismissed the second, third, and fourth causes of action of the complaint, without prejudice to leaving open the first cause of action to be litigated by the parties.

From that judgment the plaintiff has appealed and now contends that the lower court erred (1) in sustaining the motion of defendant Cautiño Bruno for dismissal of the second, third, and fourth causes of action of the complaint, and (2) in sustaining the motion of the defendants praying that judgment be rendered dismissing the complaint as to the causes of action above mentioned, since they do not state facts sufficient to constitute a cause of action.

In discussing the preceding errors, the plaintiff contends that we should reverse the case of *Correa* v. *Heirs of Pizá*, 64 P.R.R. 938, as well as those of *Cruz* v. *Andrini*, 66 P.R.R. 119, *Fernández* v. *Heirs of Fernández*, 66 P.R.R. 831, which followed the former. Moreover, he argues that it is not true that Act No. 229 of May 12, 1942 (Laws of 1942, p. 1296) was approved in the light of our Civil Code, especially of § 125 thereof, and that the debate in the session room of the Senate among Senators Géigel Polanco and Iriarte did not involve H. B. No 242—which when subsequently presented as a substitute bill in the Senate became Act No. 229 of 1942—but S. B. No. 340, which was never approved by the Legislature.

Section 2 of Act No. 229, *supra*, as amended by Act No. 243 of May 12, 1945 (Laws of 1945, p. 814), provides:

"Section 2.—Children born out of wedlock prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation, may be recognized for all legal purposes by the voluntary action of their parents, and in their default, by that of the persons having the right to inherit therefrom. These children will be legitimized by the subsequent marriage of the parents to each other.

"In case the children referred to in this Section are not recognized by the voluntary action of their parents, and in default of the latter, by that of the persons having the right to inherit therefrom, said children shall be considered as natural children for the sole purpose of bearing the surname of their parents. The action for this recognition shall be prosecuted in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children; *It being understood, however,* That such a recognition shall only have the scope herein expressed."

The record shows that when the plaintiff was born her alleged father was married to Monserrate Bruno Domínguez. Consequently, at the date of her birth and under the Act then in force, she was an illegitimate child without any right to request her acknowledgment.[1] The Section above cited allows, however, that the children born out of wedlock prior to its taking effect who lacked the qualification of natural children according to previous legislation, be recognized for all legal purposes by the voluntary action of their parents, and in their default, by that of the persons having the right to inherit therefrom. It also provides that when such recognition is not made by voluntary action of the father or of his heirs, the natural child may institute an action of his recognition for the sole purpose of bearing the surname of his father.

In *Correa* v. *Heirs of Pizá, supra,* we held that the *voluntary action* of the father contemplated by § 2 of Act No. 229 of 1942, requires the acknowledgment by the father by a birth certificate or the execution by the putative father

---

[1] See §§ 112, 119, and 125 of the Civil Code, 1930 ed.

of a will or any other public document. The repeated and careful study we have made of appellant's brief, of the arguments set forth therein, of the citations made, and of the legislative process which culminated in the approval of the bill, which upon being signed by the Governor of Puerto Rico bears No. 229 of the Laws of 1942, does not convince us that we should change our views on the matter and, therefore, reverse our decision in said case or the following ones. It is true that the debate between Senators Géigel Polanco and Iriarte turned on S.B. 340 and not on the Senate Bill substituted for H. B. 242, which finally became Act No. 229 of 1942.[2] However, there is nothing in this debate which indicates to us that some member of the Legislature believed that any of said bills had as its purpose a different result than that which we reached in the case of Pizá. Be it as it may, statutes should be interpreted on the basis of what the Legislature did, and not on what it did not do, nor on the personal action of one of its members. 70 A.L.R. 26, 28; *State v. Marxhausen*, 171 N.W. 557, 3 A.L.R. 1505; *Reed v. Huston*, 132 Pac. 109; Ann. Cas. 1515A, 1237; 50 Am. Jur. 318, § 326. Our view continues to be that Act No. 229, as amended, operates prospectively only and that although the

---

[2] The appellant states in his brief that the contention of Senator Iriarte in said debate was that S. B. 340 should be amended in such a manner that its operation be both retroactive and prospective, and that its provisions should benefit the adulterous children born before the said legislation took effect as well as the adulterous children born after its taking effect; and that after the debate concerning S. B. 340 the Senate considered H. B. 242 and then Senator Iriarte did not raise any objection and voted in favor of S. B. 242 as amended, as well as in favor of the substitute bill that later became Act No. 229 of 1942. The appellant goes on to state that "The conclusion is immediately noticed: If the only objection of Senator Iriarte to S. B. 340 was that it only operated prospectively when he voted in favor of H. B. 242 as amended and of its substitute bill, it was because H. B. 242 had a retroactive effect." She then reaches the conclusion that the legislative intent was to liberalize prior legislation as to the children born out of wedlock and that the voluntary action of paragraph 2 of § 125 is identical to the voluntary action provided in subdivisions first, second, and fourth of the second paragraph of said Section, except in that they have different forms of expression.

persons born prior to its taking effect, who in accordance with the prior legislation lacked the status of natural children, may under the Act in force be acknowledged by voluntary action and enjoy by virtue thereof all the rights conferred by law on the legally acknowledged natural children, however, such recognition by voluntary action should be based on the second paragraph of § 125 of the Civil Code, 1930 ed., which requires a recognition in the birth certificate, in a will, or in any other public instrument. The uninterrupted possession of the status of natural child of the defendant father, prior or subsequent to the taking effect of Act No. 229 of 1942, by express provision of said Section, may only serve as a basis for a judicial action for the obligatory recognition of the child by the alleged father or by his heirs, but in a case like the present one for the sole purpose, of course, of bearing the surname of the father. The acknowledgment by judicial action, is not, consequently, the acknowledgment by voluntary action referred to in § 2 of Act No. 229.

The rule set forth in *Correa* v. *Heirs of Pizá, supra,* to the effect that under § 125 of the Civil Code, 1930 ed., status as natural child is granted (1) by *voluntary* action of the father but only by means of public instrument; (2) by involuntary action through a judicial proceeding which *compels* the putative father to recognize him, was not new in this jurisdiction. Since 1910 we stated in *Armsterdam et al.* v. *Puente et al.,* 16 P.R.R. 527, 533, the following:

"It is conceded that there have always been two kinds of acknowledgments, *one voluntary and one obligatory.* The distinction between these two kinds of acknowledgments is drawn in the *Gual*[3] case, when it speaks of the rights consequent upon a solemn and authentic recognition of natural affiliation. . ."

"     .     .     .     .     .     .     .     .     .     .

"We think it is a fair deduction from the provisions of the Civil Code, heretofore in existence, as well as the practice and jurisprudence in this regard that, *without some authentic act*

---

[3] *Gual et al.* v. *Bonafoux et al.,* 15 P.R.R. 545, 553.

*which reveals the will of the father to give the child a status, the child has only a right of action to compel the father to confer such status.* Section 135 of the Spanish Civil Code and section 189 of the Porto Rican Civil Code provide for the cases when a father is *compelled* to acknowledge his illegitimate child. He can be *compelled* by an action, and *the necessity for such action can only be said to be dispensed with when there are some solemn acts on the part of the father, which show that this obligation has already been performed. It is the plain inference from these sections that although a father may have done, as in the case before us, any number of acts to show that a particular person was his child, yet he cannot be said to have acknowledged him according to the legal use of the word 'acknowledgment'. If he may be compelled then before such compulsion the* desideratum *has not been attained.* Until there is some solemn act or some declaration on the part of a court a child cannot be said to have acquired the civil status of an acknowledged natural child. In the case under consideration there was no satisfactory evidence of any intention on the part of the father to acknowledge his natural children with all its legal effects." (Italics ours.)

See also *Puente et al.* v. *Puente et al.*, 16 P.R.R. 556, 559; *Matienzo* v. *Morales et al.*, 16 P.R.R. 553; *Rijos* v. *Folgueras et al.*, 16 P.R.R. 593, 598; *Calaf et al.* v. *Calaf*, 17 P.R.R. 185, 197; *Rivera* v. *Cámara*, 17 P.R.R. 503 (reversed on other grounds in *Sampedro* v. *Fournier*, 69 P.R.R. 543); *Peñagarícano* v. *Peñagarícano et al.*, 19 P.R.R. 472, 475; *Figueroa* v. *Díaz et al.*, 19 P.R.R. 683, 691; *González et al.* v. *López et al.*, 19 P.R.R. 1056, 1059; *Figueroa* v. *Díaz et al.*, 20 P.R.R. 270, 273; *López* v. *López et al.*, 23 P.R.R. 766, 769. Ignorance of the interpretation which through the years and in a series of uninterrupted cases we have given to § 125 of the Civil Code and the purpose of implicitly repealing it can not be attributed to the lawmaker. In approving Act No. 229 of 1942, he did it in the light of the construction given to that Section.

The plaintiff admitted in the stipulation made in open court that she has not been recognized in the birth certificate,

or by will, or any other public document. There has not been, therefore, an acknowledgment by voluntary action. Therefore, the second, third, and fourth causes of action of the complaint fall from their own basis.

What we stated above and what we stated in *Correa* v. *Heirs of Pizá, supra,* in connection with the recognition by voluntary action on the part of a supposed father is applicable *mutatis mutandis* to the acknowledgment by voluntary action of his heirs. The lower court did not commit the errors assigned.

The judgment appealed from should be affirmed.

---

Mr. Justice Negrón Fernández, dissenting.

The social importance of the question which has come again before us in connection with the interpretation and scope of § 2 of Act No. 229, approved May 12, 1942, insofar it provides "may be recognized by voluntary action" when referring to the children born out of wedlock prior to the taking effect of said Act, moves me to set forth the grounds of my dissent in this case.

When Act No. 229 was enacted § 2 read as follows:

"Children born out of wedlock prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation, may be recognized for all legal purposes *by the voluntary action* of their parents, and in their default, by that of the persons having the right to inherit therefrom. These children will be legitimized by the subsequent marriage of the parents, to each other." (Italics ours.)

On May 12, 1945, the following paragraph was added to said Section by Act No. 243 of that date:

"In case the children referred to in this Section are not recognized by the voluntary action of their parents, and in default of the latter, by that of the persons having the right to inherit therefrom, said children shall be considered as natural children for the sole purpose of bearing the surname of their parents.

The action for this recognition shall be prosecuted in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children; *It being understood, however,* That such a recognition shall only have the scope herein expressed."

In the case of *Correa* v. *Heirs of Pizá*, 64 P.R.R. 938, this Court held on May 9, 1945 that the *voluntary* action contemplated by § 2 of the above-mentioned Act, read in the light of § 125 of the Civil Code (1930 ed.), requires that the recognition be made in a birth certificate, a will, or in any other public instrument. This Court said:

"When § 2 is read in the light of § 125 of the Code, it is obvious that the acts and statements of the father subsequent to 1942 described in the complaint herein admitting parenthood are not the 'voluntary action' contemplated by § 2. Voluntary action, as § 125 indicates, means execution by the father of a birth certificate, deed, or other public instrument. The allegations of the complaint might well have entitled the plaintiff under § 125 to force her father to recognize her *involuntarily* as his natural child pursuant to a judicial order to that effect, if she had not been an adulterous child. But § 2 of Act No. 229, in providing for possible recognition of adulterous children who, like the plaintiff, were born prior to May 1942, limits this to recognition by voluntary action only, *within the meaning of that phrase in* § 125 (*Actas del Senado, supra;* Muñoz Morales, *supra*). This requires a recordation, will, or other public instrument by the father. And that did not occur here." (Italics ours.)

I think that the doctrine laid down in *Correa* v. *Heirs of Pizá, supra,* and followed in *Cruz* v. *Andrini,* 66 P.R.R. 119, and *Fernández* v. *Heirs of Fernández,* 66 P.R.R. 831, should be overruled and a new construction and scope given to the phrase *by voluntary action* to the effect that under subdivisions 1 and 2 of paragraph 3 of § 125 of the Civil Code, 1930 ed.[1] which establish, respectively, that the father is obliged

---

[1] The third paragraph of § 125 of the Civil Code (1930 ed.) equivalent in part to § 135 of the Spanish Civil Code, provides: "The father is obliged to recognize the natural child:

to recognize the natural child (1) when there exists an indubitable statement in writing of the father wherein he expressly acknowledges his paternity and (2) when the child has uninterruptedly enjoyed the condition of a natural child! of the defendant father justified by acts of the same father or of his family, the recognition resulting from an action brought by the child thereunder is by *voluntary action,* within the scope and purpose of § 2 above mentioned.

In the decision in *Correa* v. *Heirs of Pizá* this Court gave a restrictive construction to Act No. 229. By holding that the phrase *voluntary action* means the execution by the father of a birth certificate, deed or any other public instrument, as provided in paragraph 2 of § 125 of the Civil Code, it included in § 2 of Act No. 229 a limitation not contained therein. In so doing it lost view of the unquestionable and true fact that under the first two subdivisions of the third paragraph of § 125, —indubitable written statement and possession of the status—the acts of the father, to entitle the natural child to bring a judicial action for his recognition, must be, and actually and in law are, so voluntary and spontaneous as those that for the recognition under the second paragraph of said Section may be made by the father in a birth certificate or in a public instrument.

The phrase *voluntary recognition* is not covered by § 125. Recognition in a birth certificate or public instrument has been so characterized because in the second paragraph of this Section it is provided that "The natural child may be rec-

---

"When there exists an indubitable statement in writing of the father wherein he expressly acknowledges his paternity.

"2. Where the child has uninterruptedly enjoyed the condition as of a natural child of the defendant father justified by acts of the same father or of his family.

"3. When the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child.

"4. When the child may present any authentic evidence of his paternity."

·ognized by the father and mother conjointly or by one of them only either in the record of birth or in the testament or in any other public instrument." (Italics ours.)

The adjective *forced* has been given to recognition ·in cases of *indubitable written statement* and *possession of the condition* of natural child because in the third paragraph of said Section it is provided that "The father *is obliged to recognize* the natural child: (1) When there exists an indubitable statement in writing of the father wherein he expressly acknowledges his paternity; (2) Where the child has uninterruptedly enjoyed the condition as of a natural child of the defendant father justified by acts of the same father or of his family; (3) When the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child; (4) When the child may present any authentic evidence of his paternity." (Italics ours.) However, the term *forced recognition* is not an exact phrase to characterize the legal acts from which arises a voluntary and spontaneous recognition previously given by the father to the child through an indubitable written statement and possession of status. These recognitions although lacking the elements of solemnity that characterizes the express recognition in a birth certificate or by public instrument, constitute acts so voluntary and spontaneous as the latter, that only require ratification by judicial declaration. The recognition in a birth certificate or public instrument is solemn besides spontaneous; the recognition by indubitable written statement of the father in which he expressly acknowledges the paternity of the child and by the uninterrupted possession of the status of a natural child justified by acts of the father or of his family, are recognitions by voluntary action, although they may lack the requisite of solemnity.

In cases in which the recognition is made in a birth certificate or public instrument, there is no need of any further

determination for it to have immediate effects; recognition by the indubitable statement in writing of the father and by the uninterrupted possession of the status of natural child requires confirmation by the courts, but it does not lose the character of voluntary recognition because of this requirement. Commentators to the Spanish Civil Code, such as Manresa and Scaevola, studying § 135 of the Spanish Civil Code equivalent in part to § 125 of our Code, agree in that the cases of recognition by indubitable written statement of the father and by uninterrupted possession of the status of natural child do not carry with them an investigation of the paternity as they only impose upon the father, the ratification *of his prior recognition.*

Manresa in his *Comentarios al Código Civil Español*, Vol. 1, pp. 600–1, states:

"The framers of the Code, as we have stated, must have submitted themselves to the *Ley de Bases*, and therefore *have rejected the free investigation of the paternity.* The cases of forced recognition which are set forth in paragraphs 1 and 2 of this Section *do not comprise it because in general the father is only compelled by them to ratify his previous recognition* expressed in a private document or by the acts constituting possession of the status of a natural child: *it being in the last instance a mere enlargement of Article 131 in which the forms of acknowledgment are established.* To those provided therein there must now be added the private document and the acts of family life which imply the same fact. Therefore, *the Article does not apart itself from the Ley de Bases, nor from the tradition of our law in which the recognition of the father had to be spontaneous, voluntary, and legally made and proved.* All these requirements are found in the true *fact* of *the previous recognition, which the child has only to present in order that its authenticity be ratified by the courts.*" (Italics ours, except the word "fact".)

And Scaevola, Civil Code, Vol. III, pp. 181–2, states the following:

"The Spanish Code, inspired in the national precedents, does not expressly forbid the investigation of the paternity but does not authorize it either, since what it does *is to permit the judicial declaration of the paternity when it has already been extrajudicially established as is shown by the first and second paragraphs of the article.*

"The first paragraph provides that there exist an indubitable written statement of the father in which he expressly recognizes his paternity, and indeed such precept cannot be conceived without bearing in mind the prejudice and suspicion with which the lawmakers of all countries have looked on all matters concerning natural children. When the father has recognized the child, not in an implicit manner but in an express one, and not by virtue of any writing, but by one that is unquestionable, that is, which gives no place to doubt, why compel the child to institute an action to obtain what is certain and unquestionable? This provision of the Article is most burdensome and unfavorable for the child who, the father being alive or there being a person to represent him pursuant to the provisions of paragraph 1 of Article 137, must bring his action against the heirs of the alleged father. Why is the child bound to bring an action against them *for the purpose of obtaining what had already been established? Why this double recognition, that is, the forced one after the voluntary one?*

"The provisions of the second paragraph merit similar objections. Why must the child prove the paternity when said paternity appears from direct acts of the father or of his family? Why a new justification of his natural filiation, if the child—the Code starts on this assumption—*is enjoying the uninterrupted possession of such civil status? What more express recognition is desired than the conduct of the principal and directly interested person?* To permit the investigation of the paternity as is done by the Code in the first two paragraphs of this Article, when said paternity has already been shown, is equivalent to denying indirectly such right, since in both cases the recognition is left at the caprice and will of the father. The person who leaves a writing expressly recognizing the paternity of a natural child or keeps the child in his house feeding and educating him, shows that he is not a wicked person and it can be asserted that sooner or later he would have recognized the child in any of the manners set forth in Article 131. It is not, therefore, against these parents that the inquiry should be per-

mitted but against those who, having such character, due to their vicious and perhaps criminal conduct have deliberately abstained from falling within any of the two subdivisions of the Article." (Italics ours.)

The term *forced recognition*, used to denote the character of the recognition in cases in which there exists an indubitable written statement by the father or the possession of the status, is in my judgment only a caption that does not fully express the true nature and character of the previous recognition which those acts, voluntarily and spontaneously made, carry with them. The caption, however, cannot affect—but rather requires as a condition precedent for its being solemnified and affirmed by the Court—the voluntary character of the acts from which flows the recognition. This is the reason for the question of Scaevola "why that double recognition, that is, the forced one after the voluntary one?"

The Supreme Court of Spain in its judgment of June 26, 1903, 95 *Jurisprudencia Civil* 1021, establishes, as Manresa and Scaevola do in their Commentaries, that the possession of the status to which subdivision 2 of § 135 of the Spanish Civil Code refers, consists "in the public concept in which a child is had in connection with his natural father, when this concept is formed by direct acts of the father or of his family *that show a true recognition fully voluntary, free, and spontaneous*, since the Code does not authorize the investigation of the paternity, except as provided in the Penal Code, *nor imposes such recognition against the will of the father* without, apart from this, it being necessary to make it so ostentatiously as if he were a legitimate child, taking into account the views and considerations which might exist in the social relations; therefore the mission of the courts, within this doctrine, is reduced to weighing in each case the kind, importance, and scope of the acts of recognition attributed to the natural father or his family." (Italics ours.)

A similar holding had been made in the Judgments of May 21, 1896, 79 *Jurisprudencia Civil* 1045; November 7, 1896, 80 *Jurisprudencia Civil* 503; of December 31, 1902, in which it declared that "the Civil Code *does not establish the rights* of natural children in connection with the father on the basis of *the investigation and proof* of the paternity but only on that of *their recognition* whether the latter is made in accordance with subdivision 1 of § 135, or arises from the uninterrupted possession of the status," and that "to consider *the validity* of the recognition the law requires direct acts *arising out of the will* of the person to whom the paternity is attributed." (Italics ours.) 94 *Jurisprudencia Civil* 810; and of March 26, 1904, 97 *Jurisprudencia Civil* 695.

This concept was ratified by Judgments of March 26, 1904, 97 *Jurisprudencia Civil* 695; of July 5, 1906, 105 *Jurisprudencia Civil* 58; of October 16, 1906, 195 *Jurisprudencia Civil* 382; and of October 12, 1907, 108 *Jurisprudencia Civil* 558, in which said Court held that:

"The rights of natural children in connection with the father should be established, not on the presumption or proof of paternity the investigation of which is not authorized by law, but on the basis of the recognition whether express or derived from the uninterrupted possession to which case 2 of Article 135 of the Civil Code refers:

"This possession of status, consisting in the public concept in which a child is held with respect to the natural father, is to be necessarily revealed, according to the doctrine of the Supreme Court, by direct acts which show with evidence the *spontaneous and free will* of the father or of his family, as the case may be, to have as natural child the one who seeks his recognition and fully proves the uninterrupted possession of status, that is, that the child has constant and uninterrupted relations with the father as such child, it being unlawful to confuse acts which may show more or less the presumption or conviction in which a person is of his paternity concerning natural children, with those which show his intention to place those children in the possession of such status:

"The acts attributed to the father should be characterized according to the circumstances of each case in order to define, on the basis thereof, the uninterrupted possession of the status of natural child." (Italics ours.) See also Judgment of May 26, 1920, 150 *Jurisprudencia Civil* 404.

The case of *Correa* v. *Heirs of Pizá, supra,* excludes from the term "voluntary action" used in § 2 of the above-cited Act No. 229, the recognition by judicial action although the latter necessarily depends and is grounded on previous acts of voluntary recognition of the father. We have seen how the commentators in referring to the so-called *forced recognition* see, in the very entrails of the acts generating the right to recognition which the natural child has, a voluntary recognition in which there is lacking only the requirement of solemnity. And how the Supreme Court of Spain, in defining the scope of the actions grounded on the indubitable written statement and possession of status, also predicates the exercise of such actions on the voluntary and spontaneous acts of previous recognition on the part of the father. The decisions of this Court prior to the approval of Act No. 229 [2] to the effect that the acts of recognition by an indubitable written statement and possession of status which lack the requirement of solemnity and authenticity, do not have their *desideratum* until there is a final judgment in an action brought for that purpose; that the uninterrupted possession of the status of natural child is not enough, of course, for the enjoyment of the rights acquired as a result of the authentic and genuine recognition of the natural filiation; that without some act which in an authentic manner discloses the will of the father to give the child such status, the child is

---

[2] *Amsterdam et al.* v. *Puente et al.,* 16 P.R.R. 527; (citing *Gual et al.* v. *Bonafoux et al.,* 15 P.R.R. 545; *Puente et al.* v. *Puente et al.,* 16 P.R.R. 556; *Matienzo* v. *Morales et al.,* 16 P.R.R. 553; *Rijos* v. *Folgueras et al.,* 16 P.R.R. 593; *Calaf et al.* v. *Calaf,* 17 P.R.R. 185; *Rivera* v. *Cámara,* 17 P.R.R. 503; *Peñagarícano* v. *Peñagarícano et al.,* 19 P.R.R. 472; *Figueroa* v. *Díaz et al.,* 19 P.R.R. 683 and 20 P.R.R. 270; *González et al.* v. *López et al.,* 19 P.R.R. 1056 and *López* v. *López et al.,* 23 P.R.R. 766.

only entitled to a right of action to compel the father to confer him such status, does not militate against the doctrine that I advocate as to the scope of the term "voluntary action" used in the Act under consideration.

I make this assertion because none of the decisions prior to the approval of Act No. 229, despite applying the caption of *forced recognition* to the cases grounded on the existence of an indubitable written statement and possession of status, denies that in such cases the recognitions are predicated on previous, voluntary and spontaneous acts, which are indispensable circumstances for the exercise of the action, as maintained by the commentators to the Spanish Civil Code and the Supreme Court of Spain. If this be so, how can we limit the phrase "by voluntary action" contained in § 2 of Act No. 229 to the recognition in a birth certificate or public instrument, when the action of the father or of his family is and must be so voluntary and spontaneous in the cases of an indubitable written statement and possession of status as in the former ones?

The lack of solemnity in the recognition by indubitable written statement and possession of status does not affect, and does not prejudice, in any way the voluntary and spontaneous character of the previous acts of recognition that is subsequently ratified by the court in a declaratory judgment. By such ratification only the lack of solemnity of said acts is supplied but not their voluntary and spontaneous character, which is an indispensable requisite for the ratification. In the absence of any indication in § 2 of Act 229 to limit the scope of the term "voluntary action" used therein to indicate the cases in which the children born prior to its effective date and who lacked the condition of natural children pursuant to prior legislation, may be acknowledged by their parents—or by the persons entitled to the inheritance—said Act should be construed in a liberal, not restrictive manner and not in the light of the caption given to the *forms* of acknowledgment

contained in § 125 of the Civil Code, but rather in the light of the voluntary condition of the previous acts, which determine the recognition and give rise to the right that said recognition be declared in accordance with the commentators and the decisions of the Supreme Court of Spain, so frequently cited in the study of our Civil Code that they have become a part, by adoption, of our legal system; and if in our previous decisions we did not fathom the "voluntary" condition of the previous acts of recognition contemplated by subdivisions 1 and 2 of the third paragraph of § 125, it is imperative, in construing a statute so important socially as Act No. 229, that we go to the roots of § 125 of the Civil Code to measure, in all the extent of the social justice which it pursues, the legislative action in enacting Act No. 229. "The decisions cannot remain extraneous to the functions of public law and the influence of the social environment"—Judgment of the Supreme Court of Spain of November 21, 1934, 216 *Jurisprudencia Civil* 91—in which, focusing the historical moment of Spain after it became a republic on December 9, 1931 with relation to the judicial function in the interpretation of legislation relative to filiation, said Court stated:

"Whereas, even without accepting all the conclusions propounded by the advocates of the so-called historical-evolutive method of construction of legal norms, it may be admitted to-day as a highly praised and generally accepted doctrine that grammatical and logical elements are not sufficient to fully carry out the constructive function, for if the law must be in contact with the necessities of real life, which constitute the reason for its being, the results that may be obtained from those two classic elements must be reinforced and controlled by the application of the so-called sociological element formed by that series of factors ideological, moral, and economic—which reveal and shape the necessities and the spirit of the community in each historical moment; and although it is true that these elements, apart from the fact that they can never authorize the interpreter to modify or not to apply the rule but only to mitigate it up to where the contents of the text involved permits, require

in their use much skill and prudence to avoid the risk of arbitrariness present when submitting to the subjective view of a judge evaluations as delicate as those of the moral conscience of a people, it must be acknowledged that their application is more certain and decisive when there are involved, not states of consciousness which are still nebulous and in the process of formation, but tendencies or ideas which have already penetrated in the system of positive legislation or have received their acknowledgment in an unequivocal manner in the supreme law of the State."

The judicial action, that under the first subdivision of paragraph 3 of § 125 of our Civil Code referring to the indubitable written statement of the father expressly recognizes the paternity and under the second subdivision of said third paragraph referring to the possession of the status, is not directed to the investigation of the paternity but merely to the obtention of a declaratory judgment of the previous voluntary and spontaneous recognition which, as it lacks the solemnity of the recognition in a certificate of birth or public instrument, makes such declaration necessary. In that sense, said subdivisions 1 and 2 are distinguished from subdivisions 3 and 4 following, which respectively impose on the father the obligation to recognize the child "when the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child" and "when the child may present any authentic evidence of his paternity," in that the latter do not require the previous *voluntary* and *spontaneous* acts of the father, that are qualifications of the indubitable written statement and of the possession of status under subdivisions 1 and 2. Consequently, it is to the recognition imposed on the father under subdivisions 3 and 4 that may be applied the caption of *forced recognition*, as the latter follows a judicial investigation of the paternity, a thing which does not occur under subdivisions 1 and 2.

The amendment introduced to § 2 of Act No. 229, now under our consideration, by Act No. 243 of May 12, 1945, to

the effect that the children to which said Section refers, who were not recognized by the voluntary action of their parents and in default of these by that of the persons entitled to their inheritance, shall be considered natural children *to the sole effect of using the surname of their parents*, and that the action for such recognition shall be prosecuted in accordance with the procedure fixed by the Civil Code for the recognition of natural children, is, in my judgment, applicable to those cases included in subdivisions 3 and 4 of § 125, which are the true cases of forced recognition and not to those of subdivisions 1 and 2 already mentioned. The fact that said amendment, by addition, was approved on May 12, 1945, that is, three days after the decision in the case of *Correa* v. *Heirs of Pizá*, fails to indicate that the Legislature approved the amendment in the light of the latter decision, as appears suggested in the case of *Cruz* v. *Andrini, supra*.

The date of the enactment of the amendment as it appears in the Laws of 1945, pp. 814 and 815, does not refer to the approval by the Legislature but to the approval by the executive power which is when it becomes law. The amendment was approved in the ordinary session of the Legislature of 1945 which ended its sessions on April 15th, and not subsequent to May 9th. The intention of the lawmaker in approving the bill cannot therefore the inferred from the implications of the case of Correa nor the scope of said amendment can be applied to the cases of recognition based on an indubitable written statement or the possession of status.

For the reasons stated, since the lower court dismissed the three causes of action predicated on the recognition of the plaintiff by voluntary action of his predecessor in interest through acts performed by him up to his death on May 1, 1946, as well as by the acts of his heirs—as according to the stipulation of the parties the alleged recognition was not set forth in a birth certificate or in a will or in any other public instrument—I am of the opinion that the judgment appealed

from should be reversed and the case remanded to the lower court so that the latter try on its merits the declaratory action instituted by the plaintiff for the purpose of giving solemnity to the previous recognition which she alleges to have received by the voluntary action of her predecessor in interest and his heirs.